THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. CHARLES DORNER, Appellant.— Appeal by defendant from a judgment of the Supreme Court, Kings County, rendered April 14, 1964, convicting him of grand larceny in the second degree and assault in the second degree, after a nonjury trial, and imposing sentence as a second felony offender. Judgment affirmed. At about 1:00 P.M. on November 4, 1963 the 22-year-old complainant, carrying 13 rolls of suit material, approached the intersection of Albany Avenue and Herkimer Street in Kings County. Three men advanced towards him. While one seized the complainant's right arm and the other his left arm, the defendant, whom the complainant did not know, stood in front of the complainant, ordered him to stay in the neighborhood where members of his faith lived, made an obscene reference to the complainant's mother, told him that he (defendant) was going to have a suit made from material in the complainant's possession, punched the complainant in the face, took a roll of material, struck him again and escaped. At the time of the attack the complainant was excited, cried and screamed for the police. He testified that his assailants had held him for about 10 minutes — undoubtedly an exaggerated recollection caused by his ordeal. Nevertheless, the complainant's testimony shows that he had had a close, sustained and full view of the defendant's face, clothing and physical build before the defendant struck him. On the day following the robbery, the complainant, while cruising with a police detective in the neighborhood of the crime, saw the defendant and identified him. The detective had not suggested to the complainant that the defendant was his assailant. Indeed, the detective asked the complainant, prior to arresting the defendant, whether the complainant was certain of his identification of the defendant and the complainant answered that he was certain. At the trial the complainant's identification was positive and unshaken. In our opinion, the judgment must be affirmed. Putting aside the value to be attached to the certainty of the complainant's trial identification of the defendant (cf. 4 Wigmore, Evidence [3d ed.], § 1130, p. 208), the complainant's pretrial identification was spontaneous and unaccompanied by any suggestive circumstance. Of such an identification Wall states that "it is by and large the most reliable type of identification" (Wall, Eye-Witness Identification in Criminal Cases [1965], p. 181, n. 2). No evidence of any kind appears in this record that the police had knowledge of the identities of persons who had witnessed the robbery. Nor does the fact that the complainant spontaneously identified the defendant while the complainant was seated in a slowly moving car, while the defendant was walking on a sidewalk, make that identification inherently untrustworthy. While the observation of a defendant who allegedly was seated in a fast-moving vehicle presents obvious factual issues concerning the reliability of a subsequent identification (Wall, op. cit., supra, p. 18), the identification at bar is readily distinguishable. First, the complainant had initially observed the defendant immediately prior to and during the robbery. Second, in the course of the robbery the defendant had invidiously referred to the complainant's religion — a circumstance which would have tended to mark the defend-

ant's identity in the complainant's mind. Third, at the time of the complainant's subsequent pretrial identification both the complainant and the defendant were traveling at low rates of speed; and, more essentially, the defendant remained within the complainant's view both prior and subsequent to the arrest. Finally, insofar as our dissenting colleagues imply that a positive identification of the type at bar requires corroboration, such a rule is unsupported by law (see *People* v. *Du Byk,* 285 App. Div. 1025, affd. 309 N. Y. 833; cf. Wall, *op. cit., supra,* pp. 182–193). Brennan, Hill and Hopkins, JJ., concur; Christ, Acting P. J., and Rabin, J., dissent and vote to reverse the judgment and dismiss the indictment, with the following memorandum by Christ, J., in which Rabin, J., concurs: As a matter of law I find that the proof in this case did not establish the defendant's guilt beyond a reasonable doubt. The People's case rests entirely upon the testimony of the complainant, the only eyewitness they produced to the crimes charged, and the testimony of a detective as to an alleged admission by defendant that the stolen cloth was at his home. The complainant positively identified defendant as one of the three men who had unexpectedly blocked his path on the afternoon in question and, more specifically, as that one who had punched him in the face and, while the other two each held one of his arms, seized one of the 13 rolls of suit material he was carrying, struck him again and fled with the cloth as the others continued to hold and strike him. Throughout this brief incident, the complainant freely admits he was excited, frightened, crying and calling for help. As he himself described the sequence, his confrontation with this particular one of his assailants could not have lasted more than a few violent moments. The first blow left him dazed and groggy. He was able, when the police arrived, only to tell them that this assailant had been Negro, as all three were, had worn a moustache and had been dressed in a very dark coat and hat. Defendant's arrest came the following day, after the complainant, seated in a moving police car cruising the neighborhood in which the assault had taken place, pointed him out as he was walking there. Defendant's alleged accomplices, arrested at the scene almost immediately after the assault, both pleaded guilty to attempted grand larceny in the second degree prior to defendant's nonjury trial. At the trial they testified that defendant had not been involved, had not been present and, moreover, had not been known to them prior to their joint indictment. If they had reason to lie in this regard, the prosecution did not demonstrate it. In previous pretrial statements, as to which they were cross-examined by the prosecution, they had freely implicated each other (but *not* the defendant) and had identified at least one or two other members of the neighborhood group with whom they had been loitering and drinking just before they noticed the complainant's approach. The complainant himself stated that his assailants had been part of a group of five men standing nearby, that during the assault a crowd had gathered about the scene and remained until after the police arrived and that an unidentified woman had asked another bystander to summon the police and offered the complainant her home as a refuge. Despite the complainant's apparent confusion during the assault and despite the inherent untrustworthiness of an identification made from a moving automobile, the prosecution called not one of the apparently large number of eyewitnesses to testify whether defendant had been a participant, or present, or ever seen in the company of, the other assailants, residents of the neighborhood, who denied knowing him. The complainant's identification, the crucial issue in this case, went untested and unsupported. Nor was defendant's alibi evidence sufficiently refuted. His wife testified that she had left him at home to watch their children the morning of the day in question, while she went to the Welfare Department to ask about a delayed

check, and that, when she returned that evening, both her husband and her sister were at the apartment. The sister testified that she had arrived at the apartment early in the day, at an hour before the attack in question took place, had found her brother-in-law there and had remained there with him until after her sister's return. Nothing of substance was offered in rebuttal. True, these "alibi" witnesses might be presumed, because of their relationship to defendant, to entertain a bias in his favor. Yet, it is a fact that the innocent as well as the guilty are likely to spend their free time in the company of those, friends or relatives, who would be presumed biased. Defendant's inability to produce others should not weigh so heavily, particularly since there is nothing in the witnesses' testimony inherently incredible. The same cannot be said of the People's evidence. The detective who testified to an admission by defendant of possession of the stolen cloth had accompanied him to his home after the arrest. The obvious incongruity of that alleged admission with the detective's other testimony that, at the same time, defendant denied complicity; the suspicious manner in which it was noted in the detective's memorandum book (apparently squeezed into the space between two lines and written in a different color ink from the rest of the entry); and the fact that none of the cloth was found at defendant's home or elsewhere, render this witness' credibility highly doubtful. The complainant's sincerity and certainty are not doubted. However, sincere and positive eyewitnesses, not as intoxicated with fear as complainant was, have erred before. I would reverse the judgment of conviction, on the law and the facts, and dismiss the indictment.